## VAN DYKE *v.* VAN DYKE *et al.*

1. When a petition has been dismissed on demurrer, the plaintiff may, during the same term, move to reinstate the case, and when a hearing of such motion is ordered and the motion is overruled, a writ of error will lie to review such ruling.

2. A petition wherein separate and distinct causes of action against different defendants are set forth is demurrable on the grounds of multifariousness and misjoinder of parties. Where a petition is dismissed on such grounds, a refusal to reinstate the same, on a motion alleging that it was not subject to the demurrer, is obviously not erroneous.

Argued July 14, —Decided August 12, 1904.

Motion to set aside judgment. Before Judge Lumpkin. Fulton superior court. October 6, 1903.

Mary J. Van Dyke brought an equitable petition against E. A. Van Dyke, S. G. Van Dyke, Kitty V. Anderson, and Alice M. Van Dyke. The case made by the petition is, in brief, as follows: Howard B. Van Dyke died intestate, November 21, 1895, owning

certain described land, and leaving as his heirs at law the plaintiff and E. A. Van Dyke, S. G. Van Dyke, Edgar C. Van Dyke, and Kitty V. Anderson.       Edgar C. died testate, in December, 1898, leaving all of his property to the plaintiff.     E. A. Van Dyke was appointed administrator of the estate of Howard B. Van Dyke, but did not take care of or administer the realty in question. He was duly discharged as administrator.       On April 12, 1895, Howard B. Van Dyke executed an instrument in the form of a deed to this land, in which instrument no grantee was named. After his death and on November 30, 1895, E. A. Van Dyke fraudulently inserted therein the name of his wife, Alice M. Van Dyke, as the grantee.     E. A. Van Dyke never delivered this instrument to his wife, but still has it in his possession.     His wife is, however, in possession of part of the land, and has, by a security deed, conveyed a portion of it to one Benson.       Plaintiff is the owner of two fifths of the land in controversy, and E. A. Van Dyke, S. G. Van Dyke, and Mrs. Anderson each own one fifth of the same.     Mrs. Alice M. Van Dyke has no interest whatever therein, but is endeavoring to sell and encumber the land, and will do so unless enjoined.     The prayers are, that Mrs. Alice M. Van Dyke be enjoined from selling or encumbering any of the land; "that the alleged deed from Howard B. Van Dyke to said Alice M. Van Dyke be canceled and set aside; . . that the petitioner's right and title to two fifths of said lands be declared good and valid; that a writ of partition be issued and the said lands be decreed to be partitioned between this petitioner and the said E. A. Van Dyke and S. G. Van Dyke and Kitty V. Anderson, in proportion to their interests," and for process.     Upon demurrer by Mrs. Alice M. Van Dyke, the petition was dismissed upon the grounds, that there was a misjoinder of parties and causes of action, and that the petition was multifarious.     At the same term of the court, the plaintiff moved to set aside and vacate the order sustaining the demurrer and dismissing the petition.     The grounds of this motion were, that the petition was not multifarious, and that there was no misjoinder of parties or of causes of action.     At the same term the court granted an order calling on Alice M. Van Dyke and the other defendants to show cause, during that term, why the motion should not be granted.     The motion not having been reached for a hearing at that term, it was

ordered that the hearing be had on a designated date during the next succeeding term.    On that date the motion was heard and the court refused to reinstate the case.    Thereupon the movant excepted to the rulings of the court in sustaining the demurrer and dismissing the petition, and also to the refusal to reinstate.

*R. O. Lovett* and *W. W. Haden*, for plaintiff.

. *Culberson, Willingham & Johnson* and *Clifford L. Anderson*, for defendants.

FISH, P. J. (After stating the facts as above.)    1. On the call of the case in this court, the defendant in error, Alice M. Van Dyke, moved to dismiss the writ of error, on the grounds, that the exception to the ruling in sustaining the demurrer and dismissing the case was not made in time, and that the refusal to reinstate the case was a mere exercise of the discretion of the court, from which a writ of error did not lie.    There is no question that the exception to the sustaining of the demurrer and the dismissal of the petition came too late.    But the other ground of the motion to dismiss, — that a writ of error will not lie to the overruling of the motion to reinstate the case, — is not sound.    It is a well recognized rule that courts of record maintain full control over orders and judgments during the term at which they are made, and, in the exercise of a sound discretion, may revise or vacate the same, and such discretion will not be controlled by a court of review, unless manifestly abused.    Such discretion, however, is not an arbitrary, but a legal discretion, or, as defined by Bouvier, " that part of the judicial function which decides questions arising in the trial of a cause, according to the particular circumstances of each case, and as to which the judgment of the court is not controlled by fixed rules of law."    Therefore, where a question of law alone is properly presented to the court for decision, no discretion is involved, but the point must be decided according to the law governing it.    In the present case the court virtually granted a rehearing, upon pure questions of law, and, under the principle announced in *Aiken* v. *Peck*, 72 *Ga.* 434, its decision thereon may be brought to this court for review.    In that case it was held:    "Where a nonsuit has been granted, the losing party may either bring his case to the Supreme Court by writ of error, or may, during the term of the trial, move to reinstate the case, and

from a refusal of that motion, properly made, may bring the case to this court." In delivering the opinion, Chief Justice Jackson said: "The motion to reinstate, though made at the same term during which the nonsuit was awarded, was not made until more than sixty days after the nonsuit was granted, and, inasmuch as the plaintiff could not at that time sue out a writ of error to this court, it is insisted that he could not move to reinstate the case, and in that indirect way bring the points of error then made, if at all, to this court for correction. . . It would seem . . that the losing party has two remedies in all such cases, to wit: to come up at once to this court by writ of error, or to try the court below first on any legitimate motion before that court, enabling it to review its own judgments first, within the time fixed by the statute of limitations, and upon that more deliberate ruling to except and bring the cause here." Generally where proceedings to amend, open, or vacate a judgment or decree are commenced during the term at which it was rendered, the jurisdiction of the court over it for this purpose may be continued for a subsequent term, and the relief sought be granted at such term. 17 Am. & Eng. Enc. L. 815. What we now hold is not in conflict with the ruling made in *Bowen* v. *Wyeth*, 119 *Ga.* 687. There a general demurrer to the petition was sustained, and the plaintiff, during the same term, moved to reinstate, offering to amend so as to cure the defects in the original petition. It was held, that after it was decided that the petition set out no cause of action and the case was dismissed, plaintiff had no right to amend, or to a reinstatement of the case in order to permit him to amend. The petition was properly dismissed on demurrer, and it was in the discretion of the court whether it would permit the plaintiff, after the dismissal of the case, to cure the defect in the original petition by adding thereto by amendment what should have been originally alleged. So in *Southern Railway Co.* v. *Empire Printing Co.*, 120 *Ga.* 43, it appeared that the movant was guilty of laches in failing to offer certain evidence when the motion to dismiss the appeal was made, and it was ruled that this was a sufficient reason for the judge, in his discretion, to refuse to reinstate the case.

2. Did the court err in refusing to reinstate the case on the grounds set out in the motion? We think not. The petition set forth separate and distinct causes of action against different

defendants, and was, therefore, demurrable for multifariousness and misjoinder of parties. The cause of action alleged against Alice M. Van Dyke was, that the plaintiff owned a two-fifths undivided interest in the land in controversy, and that Alice M. Van Dyke was in adverse possession of the premises, under a fraudulent deed, and really owned no interest whatever in it. The relief sought against this defendant was, that she be enjoined from encumbering or selling the land, that such deed be canceled, and the plaintiff be decreed to be the owner of a two-fifths interest in the land. The cause of action set forth against the other defendants was, that the plaintiff and they were common owners of the premises in the adverse possession of Mrs. Alice M. Van Dyke, and the plaintiff had the right to have it partitioned among such common owners; and the relief sought against them was that the land should be so partitioned. These causes of action were against different defendants, and were separate and distinct. S. G. Van Dyke and Mrs. Anderson apparently have no interest whatever in common with Mrs. Alice Van Dyke, in resisting the plaintiff's claim against her. Their interests appear to be altogether with the plaintiff, and against Mrs. Alice Van Dyke. Yet there is no reason given for not making them coplaintiffs. As was said by Presiding Justice Lumpkin, in *Webb* v. *Parks*, 110 *Ga.* 639, 642, "it would not be just or fair to constrain soldiers at enmity with each other to fight side by side against a common foe, nor to allow the latter the advantage of having the attention of his adversaries diverted from attacks they might successfully make upon him by pressing distractions and causes of quarrel among themselves." It is not true that since the passage of the uniform procedure act of 1887, multifariousness is no longer a ground of demurrer to an equitable petition. That act allows the joinder of equitable and legal causes of action in one suit, but an equitable petition that would have been demurrable for multifariousness in joining separate and distinct causes of action against different defendants, prior to the passage of that act, is still demurrable on such ground. That there are numerous decisions of this court sustaining demurrers to equitable petitions, on the ground of multifariousness, since the passage of the uniform procedure act, will be seen by reference to the following cases: *Farmer* v. *Rogers*, 88 *Ga.* 162; *Stuck* v. *Southern Steel Co.*, 96

*Ga.* 95; *Pittman* v. *Bentley,* 102 *Ga.* 10 ; *Hawkins* v. *Georgia & Alabama Railway Co.,* 108 *Ga.* 784; *Webb* v. *Parks,* 110 *Ga.* 639; *Shingleur* v. *Swift,* Ib. 891; *Portwood* v. *Huntress,* 113 *Ga.,* 815 ; *Osborn* v. *Deboard,* 115 *Ga.* 599; *Sims* v. *Cordele Ice Co.,,* 119 *Ga.* 597.

Counsel for the plaintiff in error, in argument before this court,. relied mainly on the cases of *Wynne* v. *Lumpkin,* 35 *Ga.* 208, and *Prater* v. *Bennett,* 98 *Ga.* 413. In the former case all the transactions grew out of an alleged fraudulent deed to land, and all of the defendants were charged to be connected with the fraud. Moreover, the case was decided by only two judges, and, even if it were in conflict with our present ruling, would not be binding authority. By reference to the report of the facts in *Prater* v. *Bennett,* it will be seen that in order for the plaintiff to have the deed from Findley to Prater reformed, it was necessary that both the grantee and the executrix of the deceased grantor should be parties to the case. When it was determined that the plaintiff was entitled to have this deed reformed, in order that it might be legally ascertained and declared what portion of the land was owned in common by Prater and herself, and what portion was owned in common by the estate of Findley and herself, it naturally followed that Prater and the legal representative of the estate of Findley were not only proper, but necessary, parties to the equitable proceeding. The ruling in that case that the petition was not multifarious because the plaintiff sought both to reform the deed in question and to recover damages for trespasses committed by Prater upon land owned in common by the plaintiff and the estate of Findley, and not embraced in the deed, is the one which it has seemed somewhat difficult to reconcile with rulings both previously and subsequently made by this court upon the subject of multifariousness. But this ruling was put upon the ground that, " under our system of pleading, both equitable and legal rights may be asserted in the same proceeding;" and "the superior court having jurisdiction of the entire controversy between plaintiff and Prater, and having before it the representative of the only other person interested in the subject-matter of dispute, it [would] be better for all concerned to have the various issues in controversy adjusted and disposed of by one trial." (See p. 416.) It will be seen that all three of the parties there

were not only proper and necessary parties to the branch of the case which sought a reformation of the deed, but they were also all interested in the branch of the case in which damages were sought to be recovered for trespasses by Prater upon land other than that embraced in the deed which the plaintiff sought to have reformed. The plaintiff and the estate of Findley were interested as common owners of the land upon which the trespasses were alleged to have been committed, and Prater was, of course, interested as he was the party alleged to have committed the trespasses and against whom the damages were claimed. Prater was the defendant who demurred, and his demurrer for multifariousness was, that "The petition [was] multifarious, in joining with a suit to recover one piece of land an action to recover damages for trespass on another piece; and in seeking to join in this action the executrix of Findley, his estate having no interest in any controversy shown in the petition between plaintiff and defendant." It will be observed that he did not in his demurrer allege that the petition was multifarious because it embraced separate and distinct causes of action against different defendants; nor did he allege that there was a misjoinder of parties defendant. As legal and equitable causes of action existing in favor of the plaintiff against him could be joined in the same proceeding, the petition clearly was not demurrable *simply* because the equitable action to recover the plaintiff's interest in the land and the legal action to recover damages for the trespasses were joined. And the allegation that the petition was multifarious "in seeking to join in this action the executrix of Findley, his estate having no interest in any controversy shown in the petition between plaintiff and defendant," pointed out no defect in the petition. As Findley's estate was a proper party to the branch of the case which sought a reformation of the deed, the petition was not multifarious *merely* because the executrix of Findley was made a party to the case. Clearly she was a proper party to one branch of the case at least. In the present case, the plaintiff seeks to recover land from one of the defendants, who is alleged to have no interest therein, but to be holding it adversely to the plaintiff and the other defendants, who are the common owners thereof, and, *in the same proceeding*, to have the land partitioned between the plaintiff and the other common

owners of the same. Now it is evident that the principal defendant, against whom all the relief except the partition is prayed, has no interest whatever which connects her with the proceeding for partition, or with the defendants therein. If she prevails in the case there can be no partition, and if she loses the land it matters not to her how it may be divided between the other parties, or whether it is divided at all. With this issue she, as a party to the case, has no concern at all. As before stated, the court, in our opinion, committed no error in overruling the motion to reinstate the case.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., who dissents.*